Good morning, Your Honors. May it please the Court, my name is John J. Davis, Jr., and I represent the appellants. In 2014, after a trial, the Superior Court found that Wayne Wong and his business colleague had intentionally and maliciously deprived their employees of the prevailing wages that they had earned on ten public works projects. The Court also found that Mr. Wong and his colleague had fraudulently concealed the wage theft and then fraudulently transferred company assets to avoid paying the employees' wage claims. Mr. Wong was a principal in a series of plumbing contracting businesses. Those businesses performed public works projects, most of them under the name Big Bear's Construction. The secret to Big Bear's and Mr. Wong's success on public work was that they paid their plumbers a tiny fraction of the wages that were required by the California Prevailing Wage Law. They paid the plumbers $11 to $18 an hour when the law required from $69 to $88 per hour, depending on the county. Big Bear's used false certified payroll records to conceal the wage underpayments. In order to make its paychecks appear legitimate, Big Bear's intentionally reported fewer hours than the employees had actually worked, and that made it look like the hourly wage rates were higher than what was actually paid. Counsel, I'm not quarreling with what you're saying there, but I do want to understand, what's your best argument for how the Supreme of State Courts finding of willfulness and maliciousness was a necessary part of any of its rulings? Well, the Superior Court judge didn't specify, but if you read the amended judgment that starts at the excerpt of record, page 91, I believe, you'll see that his findings flow straight from the intentional and malicious finding into his finding that the veils of the various Big Bear's entities, the corporation, the partnerships, the limited liability companies should be pierced to hold Mr. Wong and his colleague personally liable. How is it related to the alter ego determination? Well, it satisfies the second element of the alter ego determination, which is that it would be unjust. I mean, after finding that there was no separate corporate identity, the second element of the California test for corporate veil piercing is a finding that it would be inequitable or unjust to give respect to the corporate veil. Let me do it this way. My perspective in reading the record is what happened is that Mr. Wong didn't show up, and the court kind of gave you, I don't know whether you personally or whether other trial counsel, gave trial counsel the opportunity to prepare the judgment. And whoever did it put in whatever he or she thought was the right thing to do to help the client, but the court probably really didn't give much consideration because it wasn't a contested issue effectively. So then we get to the bankruptcy part, and we have to go back to determine how much does this mean realistically in order to satisfy the requirements of the bankruptcy code to get a discharge. And I'm frankly struggling with it. I really have some difficulty seeing how the district court was wrong on this. Where am I missing something here? Well, Your Honor, the Superior Court held a trial. We had a full-day trial. Got that. Tom Lawson, the representative from Trico Pipes who had investigated the Big Bears case, testified at length and in detail, and there was a trial declaration that went with that, and the judge asked lots of questions and satisfied himself as to the basis for imposing liability. And I don't think the judge signed. We had the trial in early October. An initial judgment was rendered a couple of weeks later, and then the amended judgment after we had moved for attorney's fees. So the trial judge had plenty of time and devoted plenty of thought. And Mr. Wong didn't appear, right? He did not appear, but he had the opportunity to appear. Oh, I get that, but, I mean, he did not appear. And so, in effect, the plaintiff's counsel had their, in effect, carte blanche as to how the judgment read. I think carte blanche is a little bit too much. A mini-carte. And, you know, the judge was really an impressive jurist. No doubt. I'm sorry? No doubt. He had spent his career as a prosecutor, prosecuting difficult, frankly, murder cases, and he took a great interest when he moved over to the civil side with one of his early assignments. He took a great deal of interest in understanding the nuts and bolts of the prevailing wage law and these violations and understanding what happened. He was not somebody who just signed off mechanically on what was put in front of him. He asked lots of questions, and his views were what we put into the final judgment. We did draft the judgment. That's the practice in California. But you also asked whether it was necessary to the judgment. And California law of collateral estoppel is very, very clear that where there are alternative grounds for holding a person liable, then each of those grounds is entitled to collateral estoppel effect. And there is no exception to that. And this Court has recognized that rule in the Zamora v. Hart case. So that's your best argument? That's the best argument for willful and malicious injury, but he also found that the debt had been incurred through fraud. Mr. Wong and his colleague had concealed their prevailing wage underpayments with false certified payroll records. Where in the judgment is the, if you will, the responsibility of Mr. Wong personally distinguished from the overall judgment in terms of the amount? You mean the actual behavior of Mr. Wong? Yeah, in other words, if you're going to nail him for something, you've got to show the amount involved, the total, do you? Not unless he's responsible as proven for the total amount. Well, the judge did not make specific findings. Under Code of Civil Procedure Section 632, a party can ask a court to prepare findings of fact and conclusions of law, but no one asked, and the judgment was sufficient. Mr. Wong had that opportunity, and that's what the law affords him is opportunity. Now, he had answered the complaint. He answered the amended complaint. He appeared for his deposition. He participated in this case. He chose not to come to trial. Right, and he denied, of course, like most people would in that situation. He denied it. The court didn't believe him, found there was liability. But as to him personally, and he's the person we're talking about here now, as far as I recall, there was no specific determination that out of the total, Mr. Wong has personally committed these various acts that would make the debt non-dischargeable in the amount of X. Is that correct? That's correct, and under this court's decision in Mueckler v. Benning, it's not necessary. Mueckler v. Benning makes very, very clear that there's no need to connect the dollar value of the harm done by the defendant to the collateral estoppel effect of the judgment. All right, so I'm looking at the amended judgment, the state court judgment dated April 30, 2014, right? Yes. Okay. Paragraph 6. Does that constitute your alter ego finding? That is the alter — that's the veil-piercing finding, yes, Your Honor. But if you look at the immediately preceding paragraph, paragraph 5, you see where the judge said that defendant's failure to pay prevailing wages and the act of concealment of this conduct was intentional and malicious. And that flows right into the alter ego finding. And so I would suggest, and I think Judge Dorfman would probably agree, that it was the finding in paragraph 5 that led to the second component of the alter ego finding in paragraph 6. Was the willfulness and maliciousness and, in quotes, necessary finding on the part of the courts in order to make the alter ego finding? Under California collateral estoppel law, as long as it's one of the alternate grounds for finding him liable and the judge wasn't explicitly clear whether he thought that there were multiple grounds for finding Mr. Wong liable, but as long as it's one of the alternate grounds, it's entitled to collateral estoppel effect. Now, the bankruptcy court had a trial based on just the declarations of the parties. Why is that incorrect? Well, the bankruptcy court really just adopted after trial its findings on summary judgment. Now, interestingly, the bankruptcy court had ruled for us on summary judgment and found that on the basis of fraud, the debt was not dischargeable, but then held that because we had not proved the actual amount of fraudulently conveyed assets, the debt would nevertheless be dischargeable, which I thought didn't make a whole lot of sense. But certainly under Mugler, we don't have to tie particular assets or particular dollars to the fraud. As long as there's a judgment for fraud, the debt is non-dischargeable, and Mugler is crystal clear on that, as is, I think, the Fifth Circuit case that the Mugler court cited. Counsel, do you want to reserve the remaining four minutes? Let me say one more thing, Your Honor, which is that these holdings were not only legally erroneous, but they were contrary to public policy. The public policy is to have workers paid for their labor. Employers who engage in willful, malicious, fraudulent conduct should not be able to use the bankruptcy court to escape responsibility just because there's an alternate basis for having held them personally liable. Mr. Wong is not entitled to discharge just because there are alternate grounds for holding him liable. Thank you, Your Honor. We'll reserve the remainder of my time. Thank you, Counsel. Thank you. May it please the Court, my name is Drew Henwood. I'm representing the appellee, Wayne Wong. I've been licensed in California since 1996. This is the first time I've appeared before the Ninth Circuit, so if I appear to be nervous, I am, and I ask you to bear with me. I think one thing that's very interesting to note, and Your Honor referred to it, in the bankruptcy court itself, there was no live testimony. And the appellants had ample opportunity to present the case, present the facts in front of the court, in front of the bankruptcy court, Judge Blumenstiel, and they chose not to. So the only evidence, so to speak, is the amended judgment, and as Your Honors are aware, Mr. Wong did not appear there either. Why didn't he appear in the state court action? I'm happy to address that, and it goes way back to the relationship or non-relationship between Mr. Wang and Mr. Wong, Mr. Wang who did the operation. Mr. Wang, who brought him into all this, told him, don't worry, I'll take care of it, and he didn't. And so Mr. Wong really didn't understand the seriousness of this until he had a judgment and they were going to garnish his wages and he had to come to me for bankruptcy representation. He works as a, again, I don't want to overstep what I can say in front of this court, but bear with me, he works and still works as a plumbing contractor. That's what he's done for many, many years. The entities that brought him into this and the evidence, what there is of it, shows that he really had virtually no involvement, and that's one of the reasons that in my brief I put a recitation of the facts that shows a great pattern of activity by Mr. Wang, who's not part of this proceeding, and virtually no activity supervision by Mr. Wong. Has any part of this judgment been enforced? I'm sorry? Has any part of the state judgment been enforced against Mr. Wang or other entities? Well, I can partially address that. They were going after him on an order for examination, and they already had the judgment, and they had notified his employer, the city and county of San Francisco, that his wages would have been garnished, which, as the court is aware, is a 25% hit. And that's what ultimately forced him into bankruptcy back in 2015. And the stay is applied up to this level. The determination has always been that debt is dischargeable. So his wages have not been affected at this point. Let me ask you this. If I understand you correctly, you've indicated that he did not appear at the state action because he was upset with Mr. Wang, who was also charged, and he didn't think there was going to be anything that could go wrong. Wang was going to take care of it. Well, I'm not sure I'd say it's not that he was upset with Mr. Wang. He trusted Mr. Wang to take care of it because Mr. Wang was also a defendant. Take care of it in the sense of paying the debt or what? No, in defending him. Defending him. And Mr. Wang did not ask him to appear? No, I'm not even sure Mr. Wang attended the trial. Okay, so nobody attended. So when you got to the bankruptcy court where you were involved, you said there was no testimony taken. Given the fact that there was an earlier action in the state court, didn't you feel it was important for Mr. Wang to appear and say, as you've indicated, well, I didn't do anything and be able to make whatever his story was? Well, he certainly understands now. No, I understand that, but, I mean, why didn't he appear? That's what I'm trying to understand. He's a plumbing contractor. He's not legally sophisticated. I didn't know him at the time, so I'm not sure I can speak to that. If I recall correctly, he actually relied on Mr. Wang or someone else to actually prepare the answer. Let me just go back to the judgment, the questions about the judgment, state court judgment. What other purpose does the intentional malicious finding in Paragraph 5 serve other than to support the finding of the alter ego in Paragraph 6? I hear it's not that great. So Paragraph 5, the state court makes a finding of intentional malicious conduct. Why make that finding other than to support the finding of alter ego liability in Paragraph 6? Well, that may well have been the purpose. If I might note on the language, the findings were intentional and malicious, whereas Kawai versus Geiger is willful and malicious, and it establishes essentially a two-separate-pronged test. One thing that Judge Blumenstiel— What's the difference between willful and intentional? Well, in terms of establishing non-dischargeability, I think these are more than terms of art. Willful is defined in Kawai versus Geiger, and it's very specific to either willfully intend the wrong or knowing that it would be substantially certain that the conduct would result in a wrong. Does an intentional satisfy the first prong of that definition? Intentional? I don't believe so, Your Honor. And again, there was no underlying factual basis to determine what Mr. Wong did. Not only that, but in terms of transferring assets, there's nothing that establishes one that he didn't transfer assets, and if so, how much. And that's one thing that Judge Blumenstiel relied on in granting dischargeability. This is 523A2A, which comes from Husky about—I think there's really two separate tests there. Let me ask you this, then. As you know, opposing counsel takes the position that given what the state trial court concluded, that all the magic language that was necessary to avoid dischargeability was there, and that under the principles of collateral estoppel, your client should have been unable to discharge this debt. What is your best argument that he's wrong? Well, two parts. One, only the bankruptcy court is entitled to make a determination of non-dischargeability. And when you look at 523A2A and 523A6, there are several elements, and including, if I could go back to Judge Blumenstiel's language, where she said in terms of her review of 523A2A and their five different elements, they established none of them. And so normally a court would take the evidence in bankruptcy court, make a determination based on who is in front of her or him, and that didn't happen here. There simply is no evidence other than a judgment for a debtor who was unsophisticated and didn't show up. Did the creditors have a right at the bankruptcy hearing to put in evidence to show some difference between that and the state court judgment? Yeah, absolutely. The objection? Absolutely. They could have called. I mean, they had depositions, but they could have. In fact, this is the only adversary proceeding I've ever seen where the defendant was not put on the stand. They could have examined him for days on end had they chosen to, and they chose not to. Are there any other questions? Thank you, counsel. Thank you. Your Honors, I have to point out that much of my opponent's factual representations are outside the record. There's no evidence in the record that Mr. Wang told Mr. Wong, I'll take care of it. There's no record in the evidence that Mr. Wong was totally uninvolved in this case. Counsel, what I don't understand, the perplexing — first of all, I'm troubled by the fact that, based on the facts we do have, that it seems like we're, you know, the result of this case is to kind of undermine the purpose of the bankruptcy court. So I'm kind of disturbed by this case. But the other thing I'm kind of disturbed about was you relied exclusively on Kalaro-Ostopo principles here. Couldn't you have established actual fraud or put in evidence as to the fraudulent transfers and the amount of the fraudulent transfers? I think one of the purposes of Kalaro-Ostopo, Your Honor, is judicial efficiency. We had proved it once, and as I understand Kalaro-Ostopo, it's to avoid the need to have repetitive and potentially inconsistent adjudications of the same thing over and over again. Now, in terms of Mr. Wong's responsibility, I think it's helpful to bear in mind that he was the contractor's license qualifier for Big Bears, for each of these companies. And he was required by law, and in applying for those licenses, he said, I will take responsibility, I will actively manage these companies, and I will make sure that their conduct complies with the law. And for the license qualifier to say later on, oh, I didn't know anything about what was going on, I shouldn't have to be responsible for it, is exactly contradictory to what the Business and Professions Code, the contractor's license law, requires. Because it is precisely to assure compliance with legal requirements that there has to be, for a corporation or a limited liability company or a partnership, there has to be someone who takes personal responsibility, who has the experience and hopefully the integrity to make sure that that contractor complies with the law. And that's in the Business and Professions Code at sections 7068 and 7068.1. Now, my opponent says that Mr. Wang prepared an answer for Mr. Wong. There's no evidence of that in the record. The name and address on the upper left-hand corner of the first page is Wayne Wong. The signature at the very end is Wayne Wong. We don't know who prepared it. Perhaps Mr. Wong did it himself. But as my opponent pointed out, he's a San Francisco plumbing inspector. He's a member of the Plumbers Union himself, and yet he purports to have no knowledge of what's going on, no knowledge of what's required, and that's just not acceptable under any concept of legal responsibility. Thank you, Your Honors. Right. Thank you, Counsel. Henry Chang Wong is submitted. We will next hear Luzama v. Clark County.
judges: Siler, Wardlaw, M. Smith